UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOLLY R., [1]

                              Plaintiff,                    Case # 23-cv-0132-FPG

v.                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

On February 14, 2020, Plaintiff Holly R. protectively applied for Disability Insurance Benefits Supplemental Social Security Income under Title II and Title XVI of the Social Security Act (the "Act"), alleging disability beginning on November 16, 2019. Tr.[2] 16. The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared and testified at a hearing before Administrative Law Judge M. Reeves (the "ALJ") September 21, 2021. Tr. 48-92. On December 13, 2021, the ALJ issued an unfavorable decision. Tr. 16-39. The Appeals Council denied Plaintiff's request for review on December 21, 2022, making the ALJ's decision the final decision of the SSA. Tr. 1-7. Plaintiff appealed to this Court on February 8, 2023.[3] ECF No. 1.

Plaintiff and the Commissioner both moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 5, 9. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

## LEGAL STANDARD

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

### I.     District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.    Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 26, 2019. Tr. 18. At step two, the ALJ found that Plaintiff has several severe impairments, including bipolar disorder, posttraumatic stress disorder, general anxiety disorder, Lyme disease, and fibromyalgia. *Id*. at 19. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. Tr. 19. The ALJ determined that Plaintiff maintained the RFC to perform "medium work . . . except [she] can understand, remember, and carry out simple, routine tasks (i.e., "unskilled work")." Tr. 21. In formulating the RFC, the ALJ considered the symptoms that Plaintiff alleged. The ALJ also evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms.

At step four, the ALJ concluded that Plaintiff was able to perform any past relevant work. Tr. 28. At step five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform. Tr. 28-29. As such, the ALJ found that Plaintiff was not disabled, as defined under the regulations. *Id.*

**II.     Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that the ALJ: (1) did not properly consider the consistency and supportability factors when evaluating the opinions of Dr. Chapman and Dr. Lieber-Diaz; and (2) failed to adequately explain how Dr. Ippolito's opinion that Plaintiff had moderate limitations in regulating emotions, controlling behavior, and maintaining well-being was incorporated into the RFC finding.

**A.  Medical Opinions - Consistency and Supportability**

Plaintiff argues that the ALJ did not properly discuss the supportability and consistency factors when evaluating the opinions of Dr. Chapman and Dr. Lieber-Diaz. ECF No. 5-1 at 11. Plaintiff contends that if the ALJ had properly considered the consistency and supportability

3

factors, the ALJ would have found those opinions persuasive and would have incorporated the moderate limitations in interacting with others from both opinions, leading to a determination of disability. *Id*. The Court disagrees.

The ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." *Id*. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. *See* 20 C.F.R. 404.1520c(a).

An ALJ is specifically required to "explain how [they] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, although the ALJ did not use the words "supportability" or "consistency," the ALJ did assess both consistency and supportability when evaluating the persuasiveness of the opinions of Drs. Chapman and Lieber-Diaz. First, the ALJ assessed the consistency of these opinions with each other when he stated "Dr. A. Chapman, Psy.D., State agency psychiatric consultant, offered

the same opinion" as Dr. Lieber-Diaz. Tr. 25. By comparing these opinions to each other, the ALJ necessarily considered the consistency of these opinions with each other. Second, the ALJ considered the supportability of these opinions when he stated "the evidence does not suggest the claimant has moderate limitations in her ability to interact with others." *Id*. Embedded in this statement is the ALJ's express determination that the opinion is not supported by the medical evidence. The ALJ then proceeded to discuss how the medical evidence supported a different conclusion regarding Plaintiff's ability to interact with others, than what is opined in Drs. Chapman's and Lieber-Diaz's opinions, as follows:

> The claimant's treatment notes generally noted normal speech, cooperative behavior, good insight and judgment, normal thought content, and normal thought processes (4F, 9F, 18F, 24F). The claimant also reported she socializes and goes hiking and camping with friends (11F, testimony). These findings and activities show the claimant has no limitation in her ability to interact with others.

Tr. 25. Because the ALJ did in fact discuss the supportability and consistency of each medical opinion, Plaintiff's contention to the contrary is baseless. Accordingly, there is no reason to remand the ALJ's decision on this issue.

### B. RFC

Plaintiff contends that the ALJ failed to adequately explain how Dr. Ippolito's opinion was incorporated into the RFC and that such failure requires remand. ECF No. 5-1 at 14. The Court disagrees.

Remand is often necessary where the ALJ does "not provide an explanation or discussion [about] how the assessed limitations impacted Plaintiff's ability to perform simple, unskilled work." *Jimmie E. v. Commissioner of Social Security*, 2021 WL 2493337, at *5 (W.D.N.Y. June 18, 2021). The Second Circuit has held that "an ALJ's failure to incorporate non-exertional limitations . . . is harmless error if medical evidence demonstrates that a claimant can engage in

5

simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace." *McIntyre v. Colvin*, 758 F.3d 146, 151-52 (2d Cir. 2014).

Here the ALJ determined that Plaintiff had the residual functional capacity to perform "medium work . . . except [she] can understand, remember, and carry out simple, routine tasks (i.e., "unskilled work")." Tr. 21. In a footnote, the ALJ further clarified that Plaintiff was "limited to unskilled work based on the combination of her mental and physical impairments." *Id*. Although the ALJ limited Plaintiff to medium, unskilled work, the ALJ did not incorporate certain other non-exertional limitations from the medical evidence that he found persuasive. Specifically, the ALJ found Dr. Ippolito's opinion "generally persuasive," but failed to incorporate Dr. Ippolito's opined limitations that Plaintiff was moderately limited in her ability "to regulate emotions, control behavior, and maintain well-being." Tr. 24, 838. Not only did the ALJ fail to incorporate this limitation, the ALJ also failed to explain why this limitation was omitted from the RFC and did not discuss how such limitations might have impacted Plaintiff's ability to perform unskilled work. While this failure would normally require remand, the Court finds that this error was harmless because the medical evidence demonstrates that Plaintiff could engage in simple, routine tasks or unskilled work, despite such non-exertional limitations. *See McIntyre*, 758 F.3d at 151-52.

In response to Plaintiff's arguments, the Commissioner highlights that Dr. Ippolito opined that Plaintiff's "psychiatric problems . . . did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." ECF No. 9-1 at 17 (citing Tr. 838). More importantly, however, Dr. Ippolito also opined that despite Plaintiff's moderate limitations in regulating emotions, controlling behavior and maintain well-being, she can "understand, remember or apply simple and complex directions and instructions . . . interact adequately with supervisors, co-workers and the public, sustain concentration and perform a task at a consistent pace, and sustain ordinary routine and regular attendance at work." Tr. 838.

The medical evidence demonstrates that Plaintiff can perform simple, unskilled work because Dr. Ippolito opined that Plaintiff can follow "simple and complex directions." Tr. 838. Because Dr. Ippolito also opined that Plaintiff's non-exertional limitations relating to regulating her emotions and controlling her behavior do not interfere with her work, then this is a case that falls under the rule of *McIntyre*, which held that an ALJ's failure to incorporate non-exertional limitations . . . is harmless error if medical evidence demonstrates that a claimant can work despite such non-exertional limitations. Here, Dr. Ippolito's opinion emphasized that Plaintiff's limitations would not interfere with her ability to work because Plaintiff's "psychiatric problems . . . did not appear to be significant enough" and that despite her emotions, she could "interact adequately with supervisors, co-workers and the public, sustain concentration and perform a task at a consistent pace." Tr. 838. Accordingly, the ALJ's error in not explaining why he did not incorporate Dr. Ippolito's limitations respecting Plaintiff's emotions was harmless.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 5, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 9, is GRANTED, and the decision of the ALJ is AFFIRMED. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 19, 2023
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York